UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| ARTHUR MUELLER, | Case No. 11-CV-0653 (PJS/JJG) |
| Plaintiff, | |
| v. | ORDER |
| RADIOSHACK CORPORATION, a Delaware Corporation doing business as RadioShack, | |
| Defendant. | |

---

Debra Brewer Hayes, Charles C. Hunter, REICH & BINSTOCK, LLP; Markus C. Yira; and Daniel M. Homolka, for plaintiff.

John H. Hinderaker, Christopher J.L. Diedrich, FAEGRE & BENSON LLP, for defendant.

Plaintiff Arthur Mueller leased retail space to defendant RadioShack Corporation ("RadioShack") in a shopping complex in Winona, Minnesota. Mueller believes that RadioShack incorrectly calculated the rent that it owed under the parties' lease agreement. Accordingly, Mueller brought this putative class action in Minnesota state court seeking past-due rent, as well as attorney's fees and declaratory and injunctive relief.[1] About two weeks later, RadioShack removed this action to federal court on the basis of diversity jurisdiction. During the short interval between the time that Mueller sued Radio Shack in state court and the time that RadioShack removed Mueller's action to federal court, Mueller sold his interest in the retail space to Lake Community Bank. At the time of the sale, RadioShack owed no more than

---

[1]Mueller seeks to prosecute a class action on behalf of other landlords who entered into similar leases with RadioShack and who, Mueller believes, were similarly underpaid on the basis of RadioShack's allegedly faulty interpretation of the lease agreement.

$57,693.08 in past-due rent to Mueller. The parties agree that Lake Community Bank, and not Mueller, is entitled to receive any rent that is due after the sale of the property.

This matter is before the Court on Mueller's motion to remand pursuant to 28 U.S.C. § 1447(c) and RadioShack's motion to join Lake Community Bank under Fed. R. Civ. P. 19(a). For the reasons stated below, both motions are denied.

*A. Mueller's Motion to Remand*

Mueller argues that the amount in controversy does not exceed $75,000, as is required for the Court to exercise diversity jurisdiction. *See* 28 U.S.C. § 1332(a). Because he no longer owns the retail space, Mueller says, the amount in controversy is, at most, $57,693.08.

When a complaint does not mention the amount in controversy — or alleges an amount that is less than the jurisdictional minimum — the removing party bears the burden of proving, by a preponderance of the evidence, that the amount in controversy in fact satisfies the jurisdictional minimum. *In re Minn. Mut. Life Ins. Co. Sales Practices Litig.*, 346 F.3d 830, 834 (8th Cir. 2003). The amount in controversy is measured as of the date of removal. *James Neff Kramper Family Farm P'ship v. IBP, Inc.*, 393 F.3d 828, 833-34 (8th Cir. 2005).[2]

---

[2]RadioShack argues that, in calculating the amount in controversy, the Court should not take into account the fact that Mueller sold the property before the case was removed. Although the Court need not reach this issue, the Court very much doubts that RadioShack is correct. The "jurisdictional inquiry focuses on the claims made *at the time of removal* . . . ." *James Neff Kramper*, 393 F.3d at 834 (emphasis added). This makes sense, as the federal court's jurisdiction is invoked at the time of removal. As always, in determining whether jurisdiction exists, a court is not limited to the allegations in the complaint, but must instead assess jurisdiction on the basis of all the facts known to it. *Id.* at 833-34.

The cases that RadioShack cites are not to the contrary. Although they contain broad language to the effect that courts are to assess jurisdiction on the basis of the complaint as it was filed in state court, none of them addresses whether a court should take into account an event that
(continued...)

RadioShack argues that, taking into consideration Mueller's claim for attorney's fees, the amount in controversy is met.[3]  The Court agrees.

Mueller does not dispute that a claim for contractual attorney's fees counts toward the amount in controversy for purposes of diversity jurisdiction.  *See Springstead v. Crawfordsville State Bank*, 231 U.S. 541, 541-42 (1913); *see also* 14AA Charles Alan Wright et al., *Federal Practice and Procedure* § 3712, at 806-08 (4th ed. 2011) ("the law is now quite settled . . . that the amount expended for attorney's fees are a part of the matter in controversy for subject matter jurisdiction purposes when they are provided for by contract or by state statute or otherwise as a matter of right, since these are part of the liability being enforced" (footnotes omitted)).[4]  But

---

[2](...continued)
occurred after the state-court action began but before the action was removed to federal court.  Instead, these cases mostly concern whether events occurring after *removal* — that is, *after* the jurisdiction of the federal court has been invoked — can deprive a federal court of jurisdiction.  *See, e.g.*, *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292 (1938) (post-removal reduction in amount of claim does not destroy jurisdiction).  Because cases almost never change much between the time that they are filed in state court and the time that they are removed to federal court, the references in these cases to the complaint filed in state court are best understood as (imprecise) references to the case as it existed at the time of removal.

[3]Although the lease agreement provides for the recovery of attorney's fees, *see* Compl. Ex. A Art. XIX § 2, Mueller does not cite this provision in his complaint.  Instead, he seeks attorney's fees under Minn. Stat. §§ 555.08 and 555.10.  Compl. ¶ 54.  Nevertheless, both parties have treated the complaint as raising a claim for attorney's fees pursuant to the lease agreement and have not addressed whether Mueller could recover fees under §§ 555.08 and 555.10.  The Court follows suit.

[4]The Eighth Circuit has said in dicta that "only *statutory* attorney fees count toward the jurisdictional minimum calculation."  *Rasmussen v. State Farm Mut. Auto. Ins. Co.*, 410 F.3d 1029, 1031 (8th Cir. 2005) (emphasis added); *see also Hartis v. Chicago Title Ins. Co.*, 656 F.3d 778, 781-82 (8th Cir. 2009) (per curiam) (quoting *Rasmussen*).  Although this language implies that *contractual* attorney's fees do not count toward the jurisdictional minimum, it is not entirely clear that the Eighth Circuit had contractual fees in mind.  Neither *Rasmussen* nor *Hartis* discussed contractual fees or suggested why they should be treated differently than statutory fees
(continued...)

Mueller argues that the Court can take into account only the amount of fees that were incurred as of the date that the state-court case commenced. Mueller relies primarily on a Seventh Circuit case — *Gardynski-Leschuck v. Ford Motor Company* — that held that the value of future legal services are not "in controversy" between the parties and may not be considered for purposes of determining the jurisdictional amount. 142 F.3d 955, 958-59 (7th Cir. 1998); *see also GreatAmerica Leasing Corp. v. Rohr-Tippe Motors, Inc.*, 387 F. Supp. 2d 992, 995-96 (N.D. Iowa 2005) (following *Gardynski-Leschuck*).

The Court disagrees with the reasoning of *Gardynski-Leschuck* (which is, of course, not binding on this Court). Courts routinely take into account future damages when determining the amount in controversy. *See, e.g.*, *Mass. Cas. Ins. Co. v. Harmon*, 88 F.3d 415, 416 (6th Cir. 1996) (when the validity of a disability insurance policy is at issue, future potential benefits may be taken into account in determining the amount in controversy); *Burns v. Mass. Mut. Life Ins. Co.*, 820 F.2d 246, 249 (8th Cir. 1987) ("Where the heart of a cause of action is a claim for future benefits, the amount in controversy is the present value of the claimed future benefit."); *Broglie v. MacKay-Smith*, 541 F.2d 453, 455 (4th Cir. 1976) ("Damages which the plaintiff claims will accrue in the future are properly counted against the jurisdictional amount if a right to future payments . . . will be adjudged in the present suit." (citation and quotations omitted)).

---

[4](...continued)
for jurisdictional purposes. *Hartis* relied only on *Rasmussen*. *Rasmussen* simply held that the plaintiff had not established a statutory basis for fees and cited *Crawford v. F. Hoffman-La Roche, Ltd.*, 267 F.3d 760 (8th Cir. 2001). *Crawford* had nothing to do with contractual fees. Thus, it is not clear whether the Eighth Circuit meant to suggest that contractual fees are not counted toward the amount in controversy — and, if so, what authority the Eighth Circuit was relying on for that proposition. In any event, to the extent that *Rasmussen* and *Hartis* stand for the proposition that contractual attorney's fees do not count toward the jurisdictional minimum, they are inconsistent with the Supreme Court's decision in *Springstead*.

*Gardynski-Leschuck* distinguishes such cases on the ground that attorney's fees, unlike other types of future damages, are avoidable. The Court is not convinced that this is a real distinction; many types of future damages might be avoidable — in whole or in part — but courts nevertheless take them into account in determining the amount in controversy. *Gardynski-Leschuck* also points out that counting future fees could lead to the absurd result that bitterly feuding parties could manufacture federal jurisdiction over a de minimis claim by their determination to litigate to the death. The answer to this argument is that, to count toward the jurisdictional amount, the attorney's fees must be reasonable. *See Charvat v. GVN Mich., Inc.*, 561 F.3d 623, 630 n.5 (6th Cir. 2009) (noting that reasonable attorney's fees, when mandated or allowed by statute, may be included in the amount in controversy for purposes of diversity jurisdiction). The Court will therefore take into account Mueller's likely future attorney's fees for purposes of determining the amount in controversy.

Mueller next argues that, even if it is proper to take into account the amount of attorney's fees he may incur in the future, RadioShack has offered no evidence about the likely *amount* of those fees. In fee-shifting cases, however, judges may and regularly do bring their own expertise to bear in determining a reasonable fee. *See Warnock v. Archer*, 397 F.3d 1024, 1027 (8th Cir. 2005) (district courts may draw on their own experience and knowledge of prevailing market rates).

A fee of just over $17,300 in this case would put the amount in controversy over the jurisdictional threshold. In this Court's experience, it is a rare case that can be litigated in federal court through even the summary-judgment stage for less than $17,300. This Court has regularly awarded far more than $17,300 in fees in cases that were resolved at or before the summary-

judgment stage. *See, e.g.*, *Coleman v. Crossroads Lending Grp., Inc.*, No. 09-0221, 2010 WL 4676984, at *15 (D. Minn. Nov. 9, 2010) (awarding attorney's fees of over $90,000 after a motion for partial summary judgment and a paper "trial" on stipulated facts); *Thompson v. Speedway SuperAmerica, LLC*, No. 08-1107, 2009 WL 2998163, at *1, *3 (D. Minn. Sept. 15, 2009) (awarding attorney's fees of over $50,000 where compensable time included "little more than drafting a complaint, exchanging written discovery, defending two relatively brief depositions, and engaging in settlement negotiations"); *Winthrop Resources Corp. v. Sabert Corp.*, No. 07-1735, Docket No. 69 (D. Minn. July 21, 2008) (granting plaintiff's unopposed motion for over $100,000 in fees after plaintiff won summary judgment in its favor); *Olson v. Messerli & Kramer, P.A.*, No. 07-0439, 2008 WL 1699605, at *5 (D. Minn. Apr. 9, 2008) (awarding $36,795.79 in fees and costs after plaintiff successfully opposed summary judgment and the parties settled).

At oral argument, Mueller's attorney estimated that her firm had already spent 30 hours on this case. Multiplying by counsel's hourly rate of $350 yields a fee of $10,500 — well over half of the amount necessary to meet the jurisdictional minimum. Notably, Mueller incurred this amount before the parties took any discovery or engaged in any motion practice on the merits of the case. Mueller's attorney pointed out that some of the hours were billed by her associate at a lower rate. Nevertheless, this rough estimate demonstrates the near certainty that Mueller will incur more than enough in attorney's fees to put this case over the jurisdictional threshold. The Court therefore denies Mueller's motion to remand.

B.  *RadioShack's Motion for Joinder*

RadioShack moves under Fed. R. Civ. P. 19(a) to join its new landlord, Lake Community Bank ("the Bank"), as a plaintiff in this lawsuit.  Rule 19(a) requires joinder of a party if:

>(A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
>(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>>(i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>>(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

None of these circumstances require the Bank's joinder.

First, the Bank's absence does not deprive the Court of the ability to afford complete relief to Mueller and RadioShack.  Mueller is seeking past-due rent through February 2011.  If the Bank were to be joined as a plaintiff, it would be seeking rent from March 2011 onward.  Mueller's claim is thus separate and distinct from the Bank's.  The Court is fully capable of awarding Mueller rent through February 2011 — or finding that RadioShack does not owe past-due rent to Mueller — without any reference to the Bank's interest in obtaining past-due rent beginning in March 2011.

Second, adjudicating this case in the Bank's absence will not, as a practical matter, impair the Bank's interest.  No matter the outcome of this litigation, the Bank will not be precluded from bringing its own lawsuit for past-due rent against RadioShack — and, if the Bank does so, the Bank will not be bound by anything decided in this action.  *See Pirrotta v. Indep. Sch. Dist.*

*No. 347, Willmar*, 396 N.W.2d 20, 21-22 (Minn. 1986). It is conceivable that if a number of things were to happen — specifically, (1) if the parties were to litigate this action to a conclusion; (2) if Mueller were to lose; (3) if the Bank were then to sue RadioShack; (4) if RadioShack were then to defend on grounds of res judicata or collateral estoppel; and (5) if the Bank were then to be held to have been in privity with Mueller — the Bank's ability to protect its interests could be impaired by the outcome of this litigation. But the chances of all of these contingencies being fulfilled are small — and, based on the evidence before it, the Court cannot conclude that the Bank is likely to be found to be in privity with Mueller. Moreover, the Bank seems unconcerned about such a possibility; there is no dispute that the Bank is aware of this action and has not, to date, shown any interest in joining it. Under these circumstances, the Court sees no reason to force the Bank to bring claims against RadioShack. *Cf. Gwartz v. Jefferson Mem'l Hosp. Ass'n*, 23 F.3d 1426, 1429-30 (8th Cir. 1994) (plaintiff's corporation was not a necessary party because plaintiff had the same interest in establishing the facts that the corporation had).

Finally, RadioShack is not at risk of incurring double, multiple, or inconsistent obligations in the Bank's absence. As noted, the interests of Mueller and the Bank do not overlap. Everyone agrees that, if RadioShack owes rent, it owes rent to Mueller through February 2011, and it owes rent to the Bank from March 2011 onward. Under no circumstances will RadioShack be ordered to make the same rent payments more than once. Likewise, under no circumstances will RadioShack be ordered by one court to do something, and then be ordered by another court *not* to do the same thing, leaving RadioShack with inconsistent obligations. *See Field v. Volkswagenwerk AG*, 626 F.2d 293, 301-02 (3d Cir. 1980) ("the possibility of a subsequent adjudication that may result in a judgment that is inconsistent as a matter of logic . . .

[does not] trigger the application of Rule 19"), *disagreed with on other grounds by Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826 (1989). The Court therefore denies RadioShack's Rule 19 motion for joinder.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Plaintiff's motion to remand [Docket No. 8] is DENIED; and

2. Defendant's motion for joinder [Docket No. 20] is DENIED.

Dated: December 28, 2011         s/Patrick J. Schiltz
                                 Patrick J. Schiltz
                                 United States District Judge